IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CRUCE DAVILA DEVELOPMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VIREO HEALTH DE PUERTO RICO, LLC et al.,<br><br>Defendants. | CIVIL NO. 24-1042 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

Cruce Dávila Development, LLC ("Plaintiff" or "CDD") filed the present suit against Vireo Health de Puerto Rico, LLC ("Tenant" or "Vireo PR") and Vireo Health, Inc. ("Guarantor" or "Vireo Health") (collectively, "Defendants") for breach of contract. Plaintiff avers that on November 19, 2018, it executed the *Industrial Triple Net Master Lease* ("the Lease") with Tenant in which it rented approximately 32,000 square feet of space and forty (40) parking spaces for a term of approximately one hundred twenty (120) months beginning on April 1, 2019. Plaintiff contends Vireo Health guaranteed the Lease on behalf of Vireo PR. Subsequently, on November 1, 2023, Vireo PR informed CDD that it would be terminating the Lease and vacating the premises effective immediately. Plaintiff requests $764,438.12 in amounts owed, demolition and repair of premises, broker commission, unpaid base rent and late fees, the difference in unpaid rent from the new tenant as well as court costs and attorneys' fees. (Docket No. 37).

Case 3:24-cv-01042-CVR   Document 57   Filed 03/03/26   Page 2 of 18

Cruce Dávila Development, LLC v. Vireo Health de Puerto Rico, LLC et al.
Opinion and Order
Civil 24-1042 (CVR)
Page 2
_____

Before the Court is CDD's "Motion for Summary Judgment" along with its corresponding Statement of Uncontested Material Facts, its Opposition and its Reply. (Docket Nos. 40, 47 and 53). Before the Court is also Vireo Health's "Motion for Partial Summary Judgment" along with its corresponding Statement of Uncontested Material Facts, its Opposition and its Reply. (Docket Nos. 42, 48 and 51).

For the following reasons, CDD's "Motion for Summary Judgment" is GRANTED IN PART and DENIED IN PART (Docket No. 40) and Vireo Health's "Motion for Partial Summary Judgment" is DENIED. (Docket No. 42).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows parties in a case to request summary judgment, or partial summary judgment, if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the [C]ourt's denial of the motion for summary judgment." Colón-Pérez v. Dep't of Health of P.R., 623 F.Supp.2d 230, 238 (D.P.R. 2009). In doing so, "the opposing party bears the ultimate burden of proof" and "cannot merely rely on the absence of competent evidence." Id.; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48. An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the

Case 3:24-cv-01042-CVR   Document 57   Filed 03/03/26   Page 3 of 18

Cruce Dávila Development, LLC v. Vireo Health de Puerto Rico, LLC et al.
Opinion and Order
Civil 24-1042 (CVR)
Page 3
_____

nonmoving party." Id. at 248. Similarly, a fact is material if it potentially affects the outcome of the case. Id.

"When considering a motion for summary judgment, the Court must 'draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation.'" Ayala v. Kia Motor Corp., 633 F.Supp.3d 555, 562 (D.P.R. 2022) (citing Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013)). A mere "scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Colón-Pérez, 623 F.Supp.2d at 238. Thus, "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010); Colón-Pérez, 623 F.Supp.2d. at 238; Blair-Corrales v. Marine Eng'r Beneficial Ass'n, 380 F.Supp.2d 22, 29 (D.P.R. 2005). If the evidence supports the movant's claim, determining there is no genuine dispute as to material facts and the movant is entitled to judgment as a matter of law, summary judgment must be granted. Fed. R. Civ. P. 56(a).

## UNCONTESTED FACTS

1. CDD is a limited liability company established under the laws of the Commonwealth of Puerto Rico, registered with the P.R. Department of State under the number 3661, and with its principal place of business located at Road No. 140, Km. 64.4 Barceloneta, Puerto Rico 00617. (Docket No. 37 ¶ 1).

2. Vireo PR is a limited liability company established under the laws of the Commonwealth of Puerto Rico, registered with the P.R. Department of State under the number 417644, and with its principal office in Puerto Rico located at Ochoa

Case 3:24-cv-01042-CVR   Document 57   Filed 03/03/26   Page 4 of 18

Cruce Dávila Development, LLC v. Vireo Health de Puerto Rico, LLC et al.
Opinion and Order
Civil 24-1042 (CVR)
Page 4
_____

   Building, 500 Calle de la Tanca, Suite 514, San Juan, PR, 00901. Its resident agent is CT Corporation System, with offices located at Ochoa Building, 500 Calle de la Tanca, Suite 514, San Juan, PR, 00901. (Docket No. 37 ¶ 2).

3. Vireo Health is a corporation established pursuant to the laws of the State of Delaware, with its principal place of business located at 207 S. 9th Street, Minneapolis, MN 55402. Its resident agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. (Docket No. 37 ¶ 3).

4. Vireo PR was organized on October 24, 2018. (Docket No. 40, Exhibit No. 8, p. 2).

5. Vireo PR's Certificate of Formation, issued by the Puerto Rico Department of State, at Article III, states that Tenant is a for-profit entity whose nature of business or purpose is "[c]ultivation, manufacture and dispensing of medical cannabis products in Puerto Rico." (Docket No. 42, Exhibit No. 6).

6. On November 19, 2018, CDD and Vireo PR signed the Lease in which Plaintiff, as landlord, leased approximately 32,000ft² of rentable space and forty (40) parking spaces to Tenant for a term of approximately one hundred twenty (120) months beginning on April 1, 2019. (Docket No. 37, Exhibit No. 1).

7. Vireo Health, through its Chief Executive Officer ("CEO"), Kyle Kingsley, signed the Lease as "Guarantor." (Docket No. 37, Exhibit No. 1, p. 18).

8. The Lease indicated that it was to be "construed and enforced in accordance with the laws of the jurisdiction in which the Premises are located." As the premises are in Puerto Rico, the Lease is therefore construed and enforced in accordance with the laws of Puerto Rico. (Docket No. 40, Exhibit No. 4, p. 15).

Case 3:24-cv-01042-CVR    Document 57    Filed 03/03/26    Page 5 of 18

Cruce Dávila Development, LLC v. Vireo Health de Puerto Rico, LLC et al.
Opinion and Order
Civil 24-1042 (CVR)
Page 5
_____

9. The Lease was amended effective April 30, 2020, to defer the rents due for a period of three (3) months, from May to July 2020, by signing a "First Amendment to Lease." (Docket No. 40, Exhibit No. 5).

10. The Lease indicated that:

    The Guarantors, if any, shall each execute a guaranty in a form provided by Landlord. It shall constitute an Event of Default of the Tenant if any Guarantor fails or refuses, upon request to provide: (1) evidence of the execution and continued enforceability of the guaranty, including the authority of the party signing on Guarantor's behalf to obligate Guarantor, and in the case of a corporate Guarantor, a certified copy of a resolution of its board of directors authorizing the making of such guaranty, (2) current financial statements, (3) an estoppel certificate, or (4) written confirmation that the guaranty is still in effect as a valid binding obligation.

    (Docket No. 37, Exhibit No. 1, p. 17).

11. Vireo Health never signed a separate guaranty document, as provided by the Lease. (Docket No. 42, Exhibit No. 9).

12. On November 1, 2023, Vireo PR informed Plaintiff via letter that it would be vacating the Premises effective immediately, and would no longer be remitting monthly payments thereunder, effective on that same date. (Docket No. 40, Exhibit No. 6).

13. Since November 1, 2023, and to this date, Vireo PR has not made any rent or Common Area Maintenance ("CAM") payments to Plaintiff. (Docket No. 39 ¶ 8).

14. On November 16, 2023, Plaintiff sent Vireo PR and Vireo Health an extrajudicial claim demanding payment of the amounts owed to Plaintiff under the Lease. Neither Vireo PR nor Vireo Health replied to the letter. (Docket No. 40, Exhibit No. 7).

## SUMMARY OF ARGUMENTS

**A. Plaintiff's Motion for Summary Judgment.**

As to Vireo PR, Plaintiff argues it has defaulted its obligations under the Lease and that, according to the terms of said Lease, Vireo PR is liable to Plaintiff for accrued rent, operating expenses, CAM, a 10% late charge, broker's commission, unpaid rent plus late charges and the present value of mitigated unpaid rent. As to Vireo Health, Plaintiff avers it signed the Lease as guarantor of Tenant and is, thus, liable for the obligations Tenant failed to comply with. Additionally, Plaintiff claims that, when it sent Defendants the extrajudicial letter, Vireo Health did not require a levy ("*excusión*"). Had Vireo Health done so, Plaintiff would have to go against the assets of Vireo PR before demanding payment from Vireo Health. See P.R. Laws Ann. tit. 31, § 4895. Finally, Plaintiff argues that, since Vireo Health failed to do so at that moment, or even when it answered the present suit, Vireo Health is estopped from raising that defense now. (Docket No. 40).

Defendants argue in their Opposition that Vireo Health never formally became a guarantor because a section of the Lease required guarantors to sign a separate guaranty document, which it never signed. Defendants argue that the words "if any" in section 17.1.31 of the Lease was a suspensive condition and thus, by failing to comply with it, Vireo Health's obligation never arose. Additionally, they claim the Puerto Rico Commercial Code, not the Civil Code, applies since the Lease was a commercial contract. Thus, they also claim that guarantees for commercial contracts must be in writing. P.R. Laws Ann. tit. 10, §§ 2 and 349. Finally, Defendants object to the amount Plaintiff is requesting in damages for lack of evidence supporting the calculations. (Docket No. 47).

Case 3:24-cv-01042-CVR   Document 57   Filed 03/03/26   Page 7 of 18

Cruce Dávila Development, LLC v. Vireo Health de Puerto Rico, LLC et al.
Opinion and Order
Civil 24-1042 (CVR)
Page 7
_____

In turn, Plaintiff argues in its Reply that the phrase "if any" contained in the Lease is not a suspensive condition for the Guarantor, rather it simply implies that without the separate guaranty agreement, the Guarantor is in default. Additionally, it avers that, if the Court finds the language is a suspensive condition, the condition is void because Vireo Health was the sole person responsible for the completion of the condition, which violates the dispositions of the Puerto Rico Civil Code. P.R. Laws Ann. tit. 31, § 3043. Alternatively, it argues that, by signing the amendment in 2020 as Guarantor, which did not include the separate guaranty requirement, the amendment supersedes the Lease and, thus, the signing of the separate document was no longer required. Finally, it elaborates on the monetary amount requested. (Docket No. 53).

### B. Defendant Vireo Health's Motion for Partial Summary Judgment.

Vireo Health requests partial summary judgment dismissing the claims against it because it alleges CDD had to provide a separate guaranty document and Guarantor had to sign it to be liable as a guarantor. Basing its argument on Silva v. Corte, 57 D.P.R. 725 (1940), Vireo Health's position is that the Puerto Rico Commercial Code applies in this case since the Lease is a commercial transaction between two (2) merchants to further their respective business purposes. It argues that without signing the separate guaranty, the parties failed to comply with the dispositions in the Puerto Rico Commercial Code, and thus, there is no valid and enforceable guaranty. (Docket No. 42)

In contrast, Plaintiff contends the Puerto Rico Commercial Code does not apply to the facts at hand because it does not develop or build for others and, thus, serves no commercial intermediary function. In the alternative, it proffers that, even if the Court

were to consider Plaintiff a merchant under the Puerto Rico Commercial Code, the Code does not address lease agreements within its provisions. (Docket No. 48).

Vireo Health asserts in its Reply that the relevant factors to determine whether a contract is governed by the Puerto Rico Commercial Code is the commercial transactions' purpose, its connection with commercial traffic, frequency and approach to the exchangeable value of things, and cites to Pescadería Rosas, Inc. v. Lozada, 116 D.P.R. 474, 479 (1985). It further asserts the Lease recognizes the transaction's commercial purpose and that there is case law supporting that leasing a property is a commercial endeavor for tax purposes under Daubón Belaval v. Srio. De Hacienda, 106 D.P.R. 400 (1977). Finally, it reiterates that the phrase "if any" contained in the Lease demonstrates the conditional quality of Section 17.1.31. (Docket No. 51).

## LEGAL ANALYSIS

### A. Defendant Vireo Health's Motion for Partial Summary Judgment.

"If the terms of a contract are clear and do not leave doubt about the intention of the contracting parties, the literal meaning of its clauses shall prevail." P.R. Laws Ann. tit. 31, § 3471.[1] If the clauses of the contract seem to contradict the intention of the parties, the latter will succeed. Id. See also Savary v. Mun. Fajardo, 198 D.P.R. 1014, 1030 (2017).

The Supreme Court of Puerto Rico has stated time and time again that "[t]he purpose of contractual interpretation is to determine what the real and common intention of the parties was." VDE Corp. v. F&R Contractors, 180 D.P.R. 21, 35 (2010); Mun. Mayagüez v. Lebrón, 167 D.P.R. 713 (2006); Marcial v. Tomé, 144 D.P.R. 522, 537 (1997);

---

[1] In November of 2020, the new Puerto Rico Civil Code came into effect. As the contract between the parties was formalized before the new code came into effect, the terms of the 1930 Puerto Rico Civil Code apply. See P.R. Laws Ann. tit. 31, § 11720.

Merle v. West Bend Co., 97 D.P.R. 403, 409-410 (1969) (Court's translation). To determine the intention of the parties, Courts can look at the words used in the formation of the contract or, if necessary, look at extrinsic evidence such as the behavior of the parties immediately before and after refining and signing the contract. P.R. Laws Ann. tit. 31, § 3472; Mun. Mayagüez, 167 D.P.R. at 174. However, where the terms of a contract are clear, there is no need to evaluate extrinsic evidence.

The present controversy revolves around the Guarantor's responsibility for Tenant's debt in favor of Plaintiff. To make this determination, the Court must first look at the terms established in the Lease. In doing so, it notes that, on the first page, the Lease identifies Vireo Health as the Guarantor of the contract. The Lease states, "[t]his lease [is] to be guaranteed by the parent company."[2] Since Vireo Health signed the Lease as the Guarantor, the only logical conclusion is that Vireo Health is Vireo PR's parent company.[3] Therefore, the terms of the lease are clear, to wit, Vireo Health is the Guarantor of the transaction between CDD and Vireo PR.

The root of the controversy stems from the language of section 17.1.31. It states as follows, "[t]he Guarantors, if any, shall each execute a guaranty in a form provided by Landlord."[4] The section includes no consequence if the guaranty form is not executed, nor does it explicitly condition the existence of the guaranty to the signing of this separate form. Contrary to what Vireo Health argues, the phrase "if any" is not a conditional phrase that implies that if the separate document is not signed, then the guaranty did not exist.

---

[2] Docket No. 37, Exhibit No. 1, p. 1.
[3] There is also evidence on the record that the initial negotiations for the Lease occurred on August 17, 2018, and were between Vireo Health and CDD. (Docket No. 40, Exhibit No. 3). Vireo PR was subsequently born on October 24, 2018. (Docket No. 42, Exhibit No. 6).
[4] Docket No. 37, Exhibit No. 1, p. 17.

Rather, the Court finds that "if any" "is used to indicate that something might not exist or be present."[5] The clause is, thus, applicable if there is a guarantor and inapplicable if there is no guarantor. Since Vireo Health is the Guarantor, the section was applicable, and Vireo Health was supposed to sign this separate document. The Court notes that CDD, as landlord, complied with its part of the obligation of providing the separate guaranty, yet Vireo Health failed to sign it. The docket shows, however, that Vireo Health had access to the "Lease Guaranty" because it was attached as an exhibit to Vireo Health's Motion for Partial Summary Judgment.[6] Thus, any failure to comply with the extra step section 17.1.31 required is Vireo Health's own fault. Vireo Health cannot now conveniently use its failure to comply with the terms of the Lease in its favor.

The record evidence also shows that Vireo Health, through its Chief Executive Officer Kyle Kinglsey ("Mr. Kingsley"), signed as the Guarantor of the transaction on two (2) separate and distinct occasions, over a year apart. First, it signed the Lease on April 1, 2019, where it identified itself as the Guarantor in the contract. Second, Mr. Kingsley signed the "First Amendment to Lease" dated April 30, 2020, where Plaintiff and Vireo PR decided to defer a part of the rent payments for three (3) months.[7] In addition to Mr. Kingsley, in each of those two (2) instances, two (2) witnesses for Vireo Health signed the documents. One of them was Vireo Health's Chief Operating Officer, Ari Hoffnung.[8] This further demonstrates Vireo Health's role as Guarantor throughout the duration of the contractual relationship between CDD and Vireo PR.

---

[5] LUDWIG.GURU, https://ludwig.guru/s/if+any (last visited March 3, 2026).
[6] Docket No. 42, Exhibit No. 9.
[7] Docket No. 40, Exhibit No. 5. This amendment was signed to defer the rent payments for three (3) months.
[8] Docket No. 37, Exhibit No. 1, p. 18; Docket No. 40, Exhibit No. 5, p. 2.

For the sake of the argument, even if the terms of the Lease were not clear, the Court finds the intention of the parties was always for Vireo Health to guarantee the Lease in favor of Vireo PR. Apart from signing and identifying as the Guarantor twice, there is no evidence that before the present suit was filed, Vireo Health denied being the Guarantor of this transaction. As mentioned, Vireo Health provided the Court with a copy of the unsigned "Lease Guaranty," indicating that CDD had provided it with the separate guaranty, as required by the Lease.[9] Vireo Health was the one that decided to breach its obligation by not signing it. Furthermore, and as is uncontested, when CDD sent an extrajudicial letter informing the Defendants of the debt accrued,[10] Vireo Health remained silent. Absent an explicit denial of Vireo Health's guaranty of the Lease, the Court can only conclude that Vireo Health's intention was always to guarantee the Lease. Silence amounts to acquiescence.

To free itself of responsibility, Vireo Health avers that the Puerto Rico Commercial Code applies in lieu of the Civil Code because the parties were engaged in a commercial transaction. It relies on Pescadería Rosas, Inc., 116 D.P.R. at 586, Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 122 F.3d 88 (1st Cir. 1997), Federal Deposit Ins. Corp. v. Barrera, 595 F.Supp. 894 (D.P.R. 1984), Daubón Belaval v. Srio. De Hacienda, 106 D.P.R. 400 (1977) and Silva, 57 D.P.R. at 729 to stand for this proposition. CDD, conversely, argues that the Lease is not a commercial transaction since it does not develop or build for others. In the alternative, CDD posits real estate leases are regulated by Puerto Rico Civil Code, not the Commercial Code.

---

[9] Docket No. 42, Exhibit No. 9.
[10] Docket No. 40, Exhibit No. 7.

The cases that Vireo Health cites are all distinguishable from the present lawsuit. In Pescadería Rosas, Inc., 116 D.P.R. at 477, the Supreme Court of Puerto Rico found that it could not conclude that a loan was made for a commercial purpose due to the lack of evidence presented. It specifically cited Article 229 of the Puerto Rico Commercial Code in making its decision, which states that a loan is commercial if "one of the contracting parties is a merchant" or "[w]hen the articles loaned are destined to commercial transactions." P.R. Laws Ann. tit. 10, § 1651. The present case does not deal with loans; thus, it is inapplicable.

In Garita Hotel, 959 F.Supp. at 89, the District Court dismissed the lawsuit because it found the terms of the loan had been sufficiently clear for the parties to understand that the hotel requesting the loan had to obtain a casino license as a condition thereof. On appeal, Garita argued the contract was not commercial and, thus, that no corroborating evidence was required as to the existence of the agreement. The First Circuit affirmed the District Court. The central controversy in Garita Hotel revolved around the contractual terms and casino license as a condition involved in the loan process. In the present case, the Court is not faced with a conditional loan.

In Federal Deposit Ins. Co., 595 F.Supp. at 900, the Federal Deposit Insurance Corporation bought notes and guaranties in favor of promoters engaged in the construction business from Banco Crédito, which was closed due to its unsound financial condition. The controversy pertained to whether the notes and guaranties were time-barred by the three (3) year statute of limitations contained in the Puerto Rico Commercial Code. Thus, this case is also inapposite.

Case 3:24-cv-01042-CVR   Document 57   Filed 03/03/26   Page 13 of 18

Cruce Dávila Development, LLC v. Vireo Health de Puerto Rico, LLC et al.
Opinion and Order
Civil 24-1042 (CVR)
Page 13
_____

In Daubón Belaval, 106 D.P.R. at 413, the Puerto Rico Supreme Court determined that an association between three (3) brothers who operated a property leasing business was owned in common ownership ("*comunidad de bienes*") and not as a partnership for tax purposes. This case does not even mention the Puerto Rico Commercial Code and deals with a completely different area of law. The issue before the Court today has nothing to do with a "*comunidad de bienes*" nor with taxes. Hence, this holding is not relevant.

Finally, the central issue in Silva, 57 D.P.R. at 729 was whether the plaintiff needed her husband to appear in Court to be able to sue her sublessee. The Court ruled that the husband's presence was unnecessary since there were statutes that recognized a married woman's right to engage in commercial activity. The Court's acknowledgement that she was engaging in commercial activity by both running a beauty salon and renting a room to sublessees was accessory to the central controversy of whether she was able to sue alone. Thus, the controversy in Silva is unrelated to the case at hand.

In sum, the cases Vireo Health cited are distinguishable from the present case. Although the cases mention commercial activity was afloat, those statements are merely dicta, and the Court cannot rely on them to make its decision in the instant case. Vireo Health points to no cases where the Puerto Rico Supreme Court has found that renting a building to operate a business is enough to make the Commercial Code applicable in lieu of the Civil Code and its lengthy and specific dispositions regarding leases.

Alternatively, Vireo Health argues the signing of the "Lease Guaranty" was a suspensive condition that needed to be met to be liable to Plaintiff. However, Vireo Health points to no disposition in the Lease that expressly states the responsibility as a guarantor would not materialize until that separate document was signed, or that noncompliance

with said clause would nullify the guarantor's responsibility if it had already signed as such.

For the sake of the argument, even if the Court were to find the Puerto Rico Commercial Code applies, it solely states "[t]he commercial guaranty must be reduced to writing, otherwise it shall be null and void." P.R. Laws Ann. tit. 10, § 1822. As discussed, the Guarantor's obligation was created in the Lease, which is a twenty-six (26) page contract reduced to writing, formalizing the Guarantor's responsibility and complying with the clauses of the Puerto Rico Commercial Code. The parties voluntarily added the extra step that the Guarantor had to "execute a guaranty in a form provided by Landlord,"[11] however, the Guarantor's role had already been established and signed for by Vireo Health's CEO. The Court notes this "Lease Guaranty" is one (1) page and a half and includes a more detailed description of the Guarantor's responsibilities.[12] Nevertheless, the Puerto Rico Civil Code dedicates a whole section to a guarantor and its responsibilities, thus, the role of the guarantor is a defined and established figure that did not require an extra document to come to fruition. By including the disposition in the Lease that the parent company would act as Guarantor, the parties complied with the requirement that it be in writing.

Although the Court notes the "Lease Guaranty" was never signed, the terms of the contract are crystal clear, namely, Vireo Health is Vireo PR's Guarantor on the Lease. Under Puerto Rico law, a guarantor is obliged to pay or fulfill obligations on behalf of a third party, if the latter fails to do so. P.R. Laws Ann. tit. 31, § 4871. See Andamios de P.R.

---

[11] Docket No. 37, Exhibit No. 1.
[12] Docket No. 42, Exhibit No. 9.

v. JPH Contractors, Corp., 179 D.P.R. 503, 511-517 (2010). Since it is undisputed that Vireo PR unilaterally terminated the Lease, Vireo Health is equally responsible to CDD for the fulfillment of Vireo PR's obligation.

In short, Vireo Health was validly named as Guarantor and is liable to CDD for the monies Vireo PR failed to pay. Finding the contrary would open the door for future guarantors to, as Vireo Health did, convey they would guarantee a contract, condition it to the signing of a separate document and escape its obligation by failing to do so.

As such, Vireo Health's Partial Motion for Summary Judgment is DENIED. (Docket No. 42).

**B. Plaintiff's Motion for Summary Judgment.**

**1. Breach of contract.**

Under Puerto Rico law, a contract is perfected when object, cause and consent concur. P.R. Laws Ann. tit. 31, § 3391. Once these requirements are validly met, they bind the contracting parties. P.R. Laws Ann. tit. 31, § 3451. In bilateral obligations, when one of the parties breaches its obligations, the other party can choose between "forcing the noncompliant party to comply with its obligations or the resolution of the contract, with compensation for damages and interest in both cases." P.R. Laws Ann. tit. 31, § 3052. (Court's translation). See also Constructora Bauzá, Inc. v. García López, 129 D.P.R. 579, 594 (1991).

CDD leased in the present case "approximately 32,000 rentable square feet" and "40 assigned dedicated parking spaces"[13] to Vireo PR. While Plaintiff's obligation was to

---

[13] Docket No. 37, Exhibit No. 1, p. 1.

provide Tenant with the rented areas, Tenant had the obligation to pay monthly rent to Plaintiff. It is uncontested that Vireo PR failed to comply with its obligation since it abandoned the property and has not paid rent since November 1, 2023.[14] There is nothing more for the Court to do other than to determine Vireo PR breached the Lease, which in any event, it does not dispute. As discussed at length above, Vireo Health is equally responsible for this breach.

Consequently, Plaintiff's Motion for Summary Judgment as to the breach of contract claim is GRANTED. (Docket No. 40).

### 2. Amounts owed.

Plaintiff moves the Court to find Defendants liable for $764,438.12. Specifically, Plaintiff requests $29,946.66 in accrued rent, operating expenses and CAM; $2,694.67 in 10% late charge; $71,755.00 in broker's commission; $450,413.33 in unpaid rent until January 21, 2025, plus late charges; $176,121.78 in mitigated unpaid rent from February 1, 2025, to March 31, 2029, minus $49,493.32 from the security deposit.[15] Separately, Plaintiff requests an estimated $56,000.00 in demolition and repair of the premises and $30,000.00 in attorney's fees.[16] Vireo Health opposes these sums by arguing Plaintiff failed to provide evidence to support these calculations.

There is no dispute that the Lease was breached, thus Defendants are entitled to Plaintiff for an amount. However, the amount requested by Plaintiff includes subjective and even estimated amounts that lack foundation in support thereof, which prevents the Court from granting summary disposition of this issue.

---

[14] Docket No. 40, Exhibit No. 6.
[15] Docket No. 40, p. 8.
[16] Id.

Section 14.2.2 of the Lease states:

> If Landlord terminates this Lease, Landlord may recover from Tenant the sum of all Base Rent and all other amounts accrued hereunder to the date of such termination; the reasonable cost of reletting the whole or any part of the Premises, including without limitation brokerage fees and/or leasing commissions incurred by Landlord, and costs of removing and storing Tenant's or any other occupant's property, repainting, altering, remodeling or otherwise putting the Premises into condition acceptable to a new tenant or tenants, and all reasonable expenses incurred by Landlord in pursuing its remedies, including reasonable attorneys' fees and court costs and the excess of the then present value of the Base Rent and other amounts payable by Tenant under this Lease as would otherwise have been required to be paid by Tenant to Landlord during the period following the termination of this Lease measured from the date of such termination to the expiration date seated in this Lease, over the present value of any net amounts which Tenant establishes Landlord can reasonably expect to recover by reletting the Premises for such period, taking into consideration the availability of acceptable tenants and other market conditions affecting leasing. Such present values shall be calculated a discount rate equal to the ninety (90) day U.S. Treasury bill rate at the date of such termination.[17]

The use of the word "reasonable" in this section, as well as the estimated damages Plaintiff has sought for some items, not only precludes the Court from granting a sum certain at this juncture but creates a need for a hearing during which Plaintiff may present evidence to support its requests and Defendants can rebut them. In its Reply, CDD proffers that, if the Court deems necessary, it can grant summary judgment for some amounts and set trial for the amounts requested in demolition and repair of the premises and broker's commission. (Docket No. 53). Nevertheless, the Court deems it necessary to hold a trial for all amounts requested.[18]

Although Plaintiff argues the Court can grant summary judgment on some sums, the Court lacks information necessary to make said calculations. For example, although

---

[17] Docket No. 37, Exhibit No. 1, p. 12.
[18] The Court will issue a separate order encouraging the parties to meet and confer in a good faith effort to reach an agreement on the amounts owed. Otherwise, the Court will set trial for the amounts requested.

Plaintiff proffers it has a new tenant renting the property, there is no evidence on record of the date in which this tenant began paying rent, nor of the amount it is paying in rent, which would be deductible from the amount Defendants owe Plaintiff. Therefore, at this juncture, it is impossible for the Court to determine an amount for Base Rent and CAM payments. This Base Rent would be the number used to calculate the late charge fee; thus, the Court cannot determine a sum certain for this either. As Defendants candidly argue, Plaintiff has failed to provide sufficient evidence to demonstrate the amount spent on demolition and repair expenses and broker's commission, making it impossible for the Court to determine the exact amounts Defendants are liable for. As such, the Court cannot grant summary judgment for a sum certain.

For these reasons, Plaintiff's Motion for Summary Judgment for payment of $764,438.12 in its favor is DENIED. (Docket No. 40).

## CONCLUSION

For the foregoing reasons, Plaintiff's "Motion for Summary Judgment" is GRANTED IN PART and DENIED IN PART (Docket No. 40) and Defendant Vireo Health's "Motion for Partial Summary Judgment" is DENIED. (Docket No. 42).

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 3rd day of March 2026.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE